**NEUROBEHAVORIAL ASSOCIATES, P.A., Appellant,**

v.

**CYPRESS CREEK HOSPITAL, INC., Appellee.**

No. 01–97–01135–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 1, 1999.

Jeffrey J. Brookner, Hirsch & Westheimer, P.C., Houston, for Appellant.

Diane M. Guariglia, Teresa A. Carver, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices COHEN and MIRABAL.

## OPINION

MARGARET GARNER MIRABAL, Justice.

This is an appeal from an order granting appellee's, Cypress Creek Hospital, Inc. ("the Hospital"), motion for summary judgment and implicitly denying appellant's, Neurobehavorial Association, P.A. ("Association"), motion for summary judgment. We reverse and remand.

### Facts and Procedural History

The Association and the Hospital entered into a Clinical and Administrative Services Agreement ("Agreement"), which provided that the Association, through its owner and sole director, Dr. John W. Cassidy, would provide medical services to the Hospital for $15, 833.33 per month.[1]

---

1. The initial term of the Agreement was two years unless otherwise terminated under sec-

The portions of the Agreement relevant to this appeal provide:

3.1 *Representations and Warranties of Association.*

Association represents and warrants to [the Hospital], upon execution and throughout the term of this Agreement as follows:

a) Association is a Texas professional association duly organized, validly existing, and in good standing under the laws of the State of Texas and is authorized to do business in Texas.

. . .

5.3 *Termination for Breach or Bankruptcy.*

If either party to this Agreement should . . . fail to substantially comply with the terms of the Agreement (the "Breaching Party"), the nonbreaching party may transmit to the Breaching Party written notice of its intention to terminate this Agreement. . . . If the event requiring such notice is a default hereunder by the Breaching Party, and if the Breaching Party *shall fail within thirty (30) days to correct the default specified in such notice* and so notify the non-breaching party, this Agreement shall terminate forthwith except as provided in this Section 5.3 . . . [or] Section 5.5. . . .

. . .

5.5 *Immediate Termination by [the Hospital].*

Notwithstanding anything to the contrary in this Agreement, [the Hospital] may terminate this Agreement immediately by written notice to Association (such termination to be effective upon Association's receipt of such notice) upon the occurrence of any of the following events:

. . .

tions 5.3, 5.4, 5.5, or 5.6 of the Agreement.

d) the failure by Cassidy to remain an employee [2] of the Association.

(Emphasis added.)

On April 14, 1995, seven months into the Agreement, the Association filed articles of dissolution with the Texas Secretary of State. Following its dissolution, the Association, through Cassidy, continued to perform the medical services called for under the Agreement. On May 3, 1995, the Hospital sent written notice to the Association of its intent to terminate the Agreement, based solely on section 5.5 of the Agreement.[3] The termination notice was received by the Association on May 7, 1995.

On June 19, 1995, the Association sued the Hospital for unpaid services [4] and anticipatory breach of contract. Two days after suit was filed, the Association filed articles to revoke its dissolution with the Secretary of State. The Secretary of State issued a certificate finding the Association's revocation in accordance with Texas law. The Hospital subsequently moved for summary judgment, contending the Association's dissolution automatically terminated Cassidy's employment, and therefore, it was entitled to terminate the Agreement under section 5.5(d). Additionally, the Hospital argued the Association breached the express warranties contained in section 3.1 of the Agreement by dissolving itself as a Texas professional association. The Association filed a cross-motion for summary judgment. The trial court granted the Hospital's motion for summary judgment,[5] and this appeal followed.

2. "Employee" is defined in section 1.7 of the Agreement as "any part or full-time employee of the Association."

3. The Hospital's termination notice provided in pertinent part:

"[I]n accordance with the provisions of paragraph 5.5 of the Clinical and Administrative Services Agreement, that agreement is hereby terminated, effectively immediately. This termination shall take effect upon date received."

## *Summary Judgment in Favor of the Hospital*

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts.,* 891 S.W.2d at 644. We will take all evidence favorable to the nonmovant as true. *Id.* We will affirm the summary judgment if any of the theories advanced in the motion, ruled on by the judge, and preserved for review is meritorious. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

## *Discussion*

The Association contends the trial court erred in granting the Hospital's motion for summary judgment because the Texas Professional Association Act ("TPAA") allows a professional association to revoke articles of dissolution. Therefore, it contends that the Hospital was not entitled to

4. The Association contends it is entitled to $19,791.66 from the Hospital for services rendered by Cassidy between April 14, 1995 and May 6, 1995.

5. The order granting summary judgment provided that the Association "take nothing from [the Hospital] for any acts or omissions alleged by the [Association] which accrued on or after April 14, 1995." The record does not contain any order either granting or denying the Association's motion for summary judgment.

terminate the Agreement based on either section 5.5(d) or 3.1. In the alternative, the Association contends that, even if its revocation was ineffective, Cassidy remained an employee of the Association, post-dissolution, by performing services necessary to wind-up the Association's affairs. The resolution of this issue requires us to interpret the relevant sections of the TPAA.

### The Applicable Rules of Statutory Construction

■■■ The primary duty of any court in construing a statute is to effectuate the intent of the legislature. *Seay v. Hall*, 677 S.W.2d 19, 25 (Tex.1984). Legislative intent should be determined by examining the language used in the statute. *Jones v. Del Andersen & Assocs.*, 539 S.W.2d 348, 350 (Tex.1976). Each statute should be read as if every word, phrase, and expression were chosen for a purpose. *State v. Office of Pub. Util. Counsel*, 849 S.W.2d 864, 868 (Tex.App.—Austin), *writ dism'd, improvidently granted*, 866 S.W.2d 209 (Tex.1993). Moreover, "every word excluded from a statute must be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

■■ Relying on section 25 of the TPAA, the Association contends that a professional association may revoke articles of dissolution. Section 25 provides that "[t]he Texas Business Corporation Act shall be applicable to professional associations, except to the extent that the provisions of the Texas Business Corporation Act conflict with the provisions of this Act." TEX. REV.CIV. STAT. ANN. art. 1528f, § 25 (Vernon 1997). The Association concedes that the TPAA does not expressly permit the revocation of articles of dissolution,[6] like the Texas Business Corporation Act ("TBCA").[7] Nevertheless, it contends that TBCA and the TPAA, construed together, allow a professional association to revoke articles of dissolution.

The Hospital, on the other hand, argues that the legislature intentionally chose not to give professional associations the right to revoke articles of dissolution. Additionally, it contends that the TPAA should not be construed in connection with the TBCA because a conflict exists between the two statutes. According to the Hospital, this conflict is evident because the TBCA specifically provides that a corporation may revoke articles of dissolution,[8] while the TPAA is completely silent in this regard.[9] We disagree with the Hospital's position.

While the TPAA is silent regarding the right of a professional association to revoke articles of dissolution, the legislature intentionally included in the TPAA a provision creating interplay between the TPAA and the TBCA. Section 25 of the TPAA mandates that the TBCA be applicable to professional associations unless there is a conflict between the two statutes. TEX.

**6.** Section 20 of the TPAA provides:
> Upon issuance of the certificate of dissolution by the Secretary of State, the dissolution shall become effective and the existence of the association shall cease except for the purpose of suits, other proceedings and acts necessary for the winding up of the association.

TEX.REV.CIV. STAT. ANN. art. 1528f, § 20 (Vernon 1997).

**7.** Article 6.05(D) provides, in pertinent part, that:
> [U]pon the issuance by the Secretary of State of a certificate of revocation of dissolution, the revocation shall be effective, the existence of the corporation shall be deemed to have continued without interruption after the issuance by the Secretary of State of the certificate of dissolution, the corporation may carry on its business as though ... dissolution proceedings had not occurred....

TEX. BUS. CORP. ACT ANN. art. 6.05(D) (Vernon Supp.1999).

**8.** *Cf.* TEX. BUS. CORP. ACT ANN. art. 6.07(B) (Vernon Supp.1999) ("Upon issuance of ... certificate of dissolution, the existence of the corporation shall cease, *except as provided in Article 6.05 or 7.12 of this Act.*") (emphasis added).

**9.** *See supra* note 6 and accompanying text.

Rev.Civ. Stat. Ann. art. 1528f, § 25. Based on the plain language of section 25, we believe the legislature intended for the TBCA to fill in the gaps where the TPAA was silent. *Cf. Memorial Hospital—The Woodlands v. McCown*, 927 S.W.2d 1, 4 (Tex.1996) (noting that, when statutory language is unambiguous, courts can evaluate legislative intent based only on terms of statute). Because the TPAA is silent regarding the ability of a professional association to revoke articles of dissolution, we must turn to the TBCA to determine if such a right exists.

■ Article 6.05(D) of the TBCA permits a corporation to revoke articles of dissolution. *See* Tex. Bus. Corp. Act Ann. art. 6.05(D) (Vernon Supp.1999). Section 20 of the TPAA does not contain any language that specifically contradicts the language of article 6.05(D). Therefore, we find that no conflict exists between these two statutes. Moreover, reading section 20 of the TPAA in conjunction with article 6.05(D) of the TBCA, we hold that a professional association may revoke articles of dissolution.[10]

Because we find that a professional association may take such action, we must address the Association's contention that the revocation of its articles of dissolution related back to the date of its dissolution, and, therefore, it never ceased to exist as a professional association, and Cassidy remained an employee of the Association at all times.

■ The law provides that revocation relates back to the date of dissolution and "the existence of the [professional association] shall be deemed to have continued without interruption." Tex. Bus. Com.Code

Ann. art. 6.05(D). However, contrary to the Association's argument, this does not mean the Hospital was powerless to enforce the terms of the Agreement. The Hospital's rights depended on the Association's status on May 3, 1995, the day the Hospital sent written notice of its intent to terminate the Agreement. If the Hospital had the right to terminate the Agreement when it did because the Association was then dissolved, then even though the Association can revoke articles of dissolution and have that relate back to the date of dissolution, it would be grossly unfair to let the Association assert its *ex post facto* change as a defense. Surely the Association would be estopped from doing so, having created the very conditions that gave the Hospital the correct impression that it was then dissolved. We reject this argument of the Association.

■ Our finding that a professional association may revoke articles of dissolution does not alone provide a basis for reversing the summary judgment granted in favor of the Hospital.[11] The trial court's order granting the Hospital's motion did not state the basis upon which summary judgment was granted. Therefore, to prevail on appeal, the Association must show that every ground alleged in the Hospital's motion was insufficient to support the judgment. *Woomer v. City of Galveston*, 765 S.W.2d 836, 837–38 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

*Did Cassidy Remain an Employee Following Dissolution?*

■ The Hospital asserted in its motion for summary judgment that it was entitled to immediately terminate the Agreement under section 5.5(d) because

10. We note that the Secretary of State interpreted the TPAA to allow professional associations to revoke articles of dissolution.

11. Between the time of its dissolution and the date it revoked its articles of dissolution, the Association could not legally provide the medical services called for under the Agreement. *See* Tex.Rev.Civ. Stat. Ann. art. 1528f, § 20 (Vernon 1997) (stating that, upon dissolution,

existence of professional association shall cease except for the purpose of suits, other proceedings, and acts necessary for winding up). Therefore, our finding that a professional association may revoke articles of dissolution does not alone provide a basis for reversing the summary judgment granted in favor of the Hospital.

Cassidy ceased to be an employee of the Association following its dissolution. The Association contends there is evidence that Cassidy remained an employee of the Association following dissolution by performing activities necessary to "wind-up" the Association's affairs before it chose to revoke its articles of dissolution and, therefore, section 5.5(d) does not apply.

After a professional association receives its certificate of dissolution from the Secretary of State, the existence of the association shall cease, "*except for the purposes of: (1) lawsuits; (2) other proceedings; and (3) acts necessary for the winding up of the association.*" Tex.Rev.Civ. Stat. Ann. art. 1528f, § 20 (Vernon 1997) (emphasis added). Here, there is evidence that, after the Association dissolved, Cassidy performed many services for the Hospital, including: (1) meeting with nurse managers to provide input on program staff; (2) reviewing program design and development plans; (3) supervising treatment staff; (4) assisting with leadership staff process group; (5) attending clinical and administrative meetings for the Hospital; (6) participating in referral development activities for the Hospital; (7) updating treatment plans; (8) providing case management updates to insurance companies; and (9) providing indigent care.

If the Hospital had shown, as a matter of law, that these services were not necessary to "wind-up" the Association's affairs or that, when Cassidy performed these services, he was not acting as an employee of the Association, it would have been entitled to terminate the Agreement based on section 5.5(d). However, it did not make such a showing. Therefore, we find that material fact issues exist.[12] Consequently,

summary judgment based on section 5.5(d) of the Agreement was improper.

Because summary judgment was not proper based on section 5.5(d) of the Agreement, we must decide whether summary judgment may be affirmed on the ground that the Association breached section 3.1 of the Agreement, which required it to remain a duly licensed professional association throughout the entire term of the Agreement.

### Did the Association Breach Section 3.1 of the Agreement?

■ There is no question that the Association breached section 3.1 of the Agreement by dissolving itself as a Texas professional association. However, in order to properly terminate the Agreement on this ground, the Hospital had to comply with the terms of section 5.3 of the Agreement. Section 5.3 required the Hospital to specify in its termination notice the specific reasons for the termination, and provide the Association with 30 days to cure its breach.

The Hospital's May 3, 1995 termination notice did not mention the Association's breach of section 3.1 of the Agreement, nor did it give the Association 30 days to cure the breach. Rather, the notice letter purported to terminate the agreement "immediately," relying solely on section 5.5. Consequently, the Hospital failed to follow the contractual prerequisites necessary to properly terminate the Agreement. Therefore, the summary judgment cannot be affirmed on this ground, either.

We find that every ground alleged in the Hospital's motion for summary judgment was insufficient to support the action of the trial judge. Therefore, we sustain the

---

12. We have found no Texas case that addresses the issue of what actions can be considered necessary to "wind-up" a dissolved entity's affairs. However, Delaware corporate law provides some guidance. "Winding-up" involves "collecting the entity's assets, settling with its creditors, and apportioning the amount of its profit and loss." *Rothschild* *Int'l Corp. v. Liggett Group, Inc.*, 474 A.2d 133, 136 (Del.1984) (citing William M. Fletcher, Corporations § 7968 (1979)). "Winding-up" also includes any other acts that are necessary to bring the dissolved entity's affairs to a conclusion. *See In re Citadel Indus., Inc.*, 423 A.2d 500, 501 (Del.Ch.1980).

Association's first, third, and fourth points of error.

### The Association's Motion for Summary Judgment

 In its second point of error, the Association contends the trial court erred by implicitly denying its motion for summary judgment. Normally, a party may not appeal from an order denying summary judgment. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). However, an exception arises when the opposing party's motion for summary judgment is granted and that judgment is appealed. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

### Discussion

In its motion, the Association asserted it was entitled to judgment on two causes of action—breach of contract and anticipatory repudiation. On appeal, the Association asks this Court to render judgment in its favor on these claims. Because fact issues exist as to whether Cassidy remained an employee of the Association following dissolution for purposes of winding up the Association, fact issues also exist as to whether the Hospital's actions constituted an anticipatory repudiation or breach of the Agreement. Therefore, we overrule the Association's second point of error.

We reverse the judgment and remand the case to the trial court.

Chief Justice SCHNEIDER, concurring.

MICHAEL H. SCHNEIDER, Chief Justice, concurring.

I concur with majority's ultimate disposition of this case. However, I write sepa-

1. I agree with the majority's finding that the Hospital was not entitled to terminate the Agreement under section 3.1.

2. In rejecting the Association's contention that the revocation of its articles of dissolution related back to the date it dissolved, the majority recognizes that the question of

rately to express my disagreement with the majority opinion on two grounds.

First, I do not believe it is necessary to determine whether a professional association may revoke articles of dissolution in order to resolve the issues presented on appeal. Even if a professional association could take such action, as the majority holds, the central question in this case remains the same: Did Cassidy remain an employee of the Association, post-dissolution, to wind-up the Association's affairs?[1] To answer this question, we need not construe the TPAA.

The Association contends we need to determine whether a professional association can revoke articles of dissolution because, if such action was proper, then the revocation of its articles of dissolution related back to the date of its dissolution, "and its existence [is] deemed to have continued without interruption." *See* TEX. BUS. COM.CODE ANN. art. 6.05(D) (Vernon Supp.1999). Consequently, it argues that, because it legally never ceased to exist, Cassidy remained an employee of the Association at all times.

As the majority correctly points out, even if we accepted this argument as true, it "does not mean that the Hospital was powerless to enforce the terms of the Agreement." Once the Association dissolved, the Hospital was entitled to enforce the terms of the Agreement, irrespective of whether the Association could come back later and revoke its dissolution.[2] Therefore, I disagree with the majority's consideration of whether the TPAA permits a professional association to revoke articles of dissolution.

Second, I disagree with the majority's conclusion that a professional association may revoke articles of dissolution. Even though section 20 of the TPAA[3] does not

whether a professional association may revoke articles of dissolution is not dispositive or necessary to decide the issues on appeal.

3. Section 20 of the TPAA provides:

Upon issuance of the certificate of dissolution by the Secretary of State, the dissolu-

expressly permit a professional association to revoke articles of dissolution, the majority holds that a professional association may take such action. The majority reaches its conclusion by construing section 25 of the TPAA in conjunction with article 6.05(D) of the Texas Business Corporations Act ("TBCA"), which allows a corporation to revoke articles of dissolution.[4]

Section 25 of the TPAA states that "[t]he Texas Business Corporation Act shall be applicable to professional associations, *except to the extent that the provisions of the Texas Business Corporation Act conflict with the provisions of this Act.*" TEX.REV.CIV. STAT. ANN. art. 1528f, § 25 (Vernon 1997) (emphasis added). The majority reasons that section 25 of the TPAA indicates the legislature intended for the TBCA to fill in the gaps where the TPAA was silent. Based on this premise, and because there is no language in the TPAA specifically contradicting the language of article 6.05D of the TBCA, the majority finds no conflict between the two statutes. Therefore, it holds that a professional association may revoke articles of dissolution.

I believe a conflict exists between the two statutes. First, the TBCA specifically provides a corporation with the right to revoke articles of dissolution, while the TPAA is completely silent in this regard. The legislature intentionally gave Texas corporations this right, while not granting the same right to Texas professional associations. We presume that every word excluded from a statute must excluded for a purpose. *Cameron v. Terrell & Garrett,* *Inc.,* 618 S.W.2d 535, 540 (Tex.1981). Moreover, we should not insert language into statutes except to give effect to clear legislative intent. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex. 1981); *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980). Here, there is no evidence the legislature intended to allow a professional association to revoke articles of dissolution. In fact, an examination of the post-dissolution legal status of a corporation versus a professional association reveals the contrary.

Section 20 of the TPAA provides that, following dissolution, the legal status of a professional association ceases *"except for the purpose of suits, other proceedings and acts necessary for the winding up of the association."* TEX.REV.CIV. STAT. ANN. art. 1528f, § 20 (Vernon 1997) (emphasis added). In comparison, a corporation's legal status ceases *"except as provided in Article 6.05 [Revocation of Voluntary Dissolution Proceedings] or Article 7.12 [Limited Survival After Dissolution] of this Act."* TEX. BUS. CORP. ACT ANN. art. 6.07(B) (emphasis added).

Clearly, the TPAA and the TBCA differ as to the legal effects of dissolution. Therefore, there is a conflict between the two statutes, and, under section 25 of the TPAA, the TPAA controls. *See* TEX.REV. CIV. STAT. ANN. art. 1528f, § 25. However, under the majority's holding, such is not the case. In finding that a professional association may revoke articles of dissolution, the majority not only grants a right to professional associations not expressly provided by the legislature, but modifies section 20 of the TPAA by creating a

---

tion shall become effective and the existence of the association shall cease except for the purpose of suits, other proceedings and acts necessary for the winding up of the association.

TEX.REV.CIV. STAT. ANN. art. 1528f, § 20 (Vernon 1997).

4. Article 6.05(D) provides, in pertinent part, that:

[U]pon the issuance by the Secretary of State of a certificate of revocation of disso-lution, the revocation shall be effective, the existence of the corporation shall be deemed to have continued without interruption after the issuance by the Secretary of State of the certificate of dissolution, the corporation may carry on its business as though ... dissolution proceedings had not occurred.

TEX. BUS. CORP. ACT ANN. art. 6.05(D) (Vernon Supp.1999).

judicial exception to the rule that the legal status of a professional association, following dissolution, ceases except to perform acts necessary to wind-up the dissolved entity's affairs.

For these reasons, I believe a conflict exists between the TBCA and the TPAA. Therefore, I disagree with the majority's holding that a professional association may revoke articles of dissolution. I respectfully concur.

